IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JULIE HOWELL, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 12-0272-WS-N |
| ) | |
| CORRECTIONAL MEDICAL ) | |
| SERVICES, etc., et al., ) | |
| ) | |
|     Defendants. ) | |

## ORDER

This matter is before the Court on the defendants' motion for summary judgment. (Doc. 47). The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 45, 55, 63, 64, 68-70, 73), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion for summary judgment is due to be granted in part and denied in part.

## BACKGROUND

The plaintiff, a white female, was employed by the entity defendant ("Corizon") as a registered nurse from November 2007 to April 8, 2011, when she was terminated. The plaintiff worked for Corizon at Fountain Correctional Facility ("Fountain"), a prison run by the Alabama Department of Corrections "(ADOC"), where Corizon provided health care services under contract with ADOC. Defendant Sharon Gaillard is a black female licensed practical nurse who worked the night shift with the plaintiff.

Certain non-parties play key roles in the story. Suzette Dailey, a black female, was Director of Nursing and the plaintiff's immediate supervisor. Deborah Thornton, a white female, was Health Services Administrator and

Dailey's immediate supervisor. Mark Jansen, a white male, was Corizon's regional manager.

The second amended complaint includes 14 counts, as follows:

| Count | Claim | Defendant(s) |
|---|---|---|
| • Count One | Racial Harassment (Title VII) | Corizon |
| • Count Two | Racial Harassment (§ 1981) | both |
| • Count Three | Retaliation (Title VII) | Corizon |
| • Count Four | Retaliation (§ 1981) | Corizon |
| • Count Five | Discrimination (Title VII) | Corizon |
| • Count Six | Discrimination (§ 1981) | Corizon |
| • Count Seven | Discrimination (Title VII) | Corizon |
| • Count Eight | Discrimination (§ 1981) | Corizon |
| • Count Nine | Breach of contract | Corizon |
| • Count Ten | Breach of contract | Corizon |
| • Count Eleven | Battery | Gaillard |
| • Count Twelve | Assault | Gaillard |
| • Count Thirteen | Invasion of privacy | Gaillard |
| • Count Fourteen | Negligent employment | Corizon |

(Doc. 37 at 29-48). The plaintiff has formally abandoned Counts Five through Nine. (Doc. 55 at 37 n.12).[1]

**DISCUSSION**

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial

---

[1] According to Corizon, the plaintiff by e-mail has "conceded that Count Ten is due to be dismissed." (Doc. 63 at 1). Because Corizon has produced no evidence of such a concession, Count Ten cannot be dismissed on that basis.

burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial."  *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116.  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[2]  Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited.  Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

## I. Federal Claims.

As the parties agree, Title VII and Section 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  Thus, the Title VII analysis applies as well to Section 1981.  *Id.*; *accord Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 n.1 (11th Cir. 2007).

### A. Racial Harassment.

Counts One and Two are entitled, "Racial Harassment."  They incorporate prior allegations concerning racial harassment the plaintiff experienced, and they allege the conduct was unwelcome and ongoing, that it was directed towards her, and that it caused her "to perceive her work environment as intimidating, hostile, abusive or offensive."  These counts allege that the plaintiff complained but that the harassment continued, and they allege that Corizon's failure adequately to address her complaints exposes it to liability.  (Doc. 37 at 29-33).

---

[2] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").

Despite these allegations, the defendants argue that the second amended complaint "does not contain a 'hostile work environment' claim." (Doc. 45 at 45). This assertion is demonstrably incorrect, as the allegations of the preceding paragraph make clear. *See, e.g., Jones v. UPS Ground Freight*, 683 F.3d 1283 (11th Cir. 2012) (a claim for hostile work environment is one that alleges harassment based on race).[3]

The defendants recognize that such a claim "is a distinct cause of action with a unique analysis and different burden of proof." (Doc. 45 at 45). Yet their treatment consists of the conclusory statement, devoid of analysis or authority – save for an unexplained citation (without pinpoint cite) to an unpublished case – that "the undisputed evidence does not show any racial discrimination or retaliation, much less possess or demonstrate the requisite pervasiveness and severity to alter Howell's conditions of employment." (*Id*. at 45-46). This bare ipse dixit is inadequate to carry the defendants' initial burden on motion for summary judgment. *Cf. Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005) ("[A] passing reference to an issue in a brief [is] insufficient to properly raise that issue …..").[4]

In their reply brief, the defendants devote over five pages to addressing the plaintiff's evidence of harassment and explaining why this evidence, accepted as true, is insufficiently severe and pervasive, from an objective standpoint,to satisfy the fourth element of a harassment claim. (Doc. 63 at 10-15). This would have been appropriate argument had it been included in the defendants' principal brief,

---

[3] In their reply brief, the defendants acknowledge that Counts One and Two are "claims for harassment/hostile work environment." (Doc. 63 at 2).

[4] Embedded within the defendants' statement of facts is the assertion that the internal complaints registered by the plaintiff for the most part did not allege overtly racist language or conduct. (Doc. 45 at 23-24). Since this is not included in the defendants' argument section, it is not clear why the Court should address it. However, the Court notes that the assertion is equally conclusory and that it focuses on the wording of the plaintiff's internal complaints rather than on her testimony concerning the language and conduct animating those complaints.

but it was not. "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining the underlying rationale). The defendants identify no reason to depart from this well-established rule, and the Court declines to do so.

### B. Retaliation.

Counts Three and Four allege that, when the plaintiff registered internal complaints of racial harassment, she was assigned additional job duties and ultimately fired. (Doc. 37 at 33-35). Corizon focuses on the termination aspect of these claims and does not address the additional-job-duties aspect. (Doc. 45 at 43-45). In light of its silence, Corizon cannot obtain summary judgment as to that portion of the retaliation claims.

Similar to discrimination cases, a retaliation case not based on direct evidence follows a burden-shifting format. First, the plaintiff must make out a prima facie case. Second, the defendant must produce evidence of one or more legitimate, non-retaliatory reasons for the plaintiff's adverse treatment. Third, the plaintiff must show that the defendant's proffered reasons are a pretext for prohibited retaliatory conduct. *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).

#### 1. Prima facie case.

"A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Corizon challenges the first and third of these elements.

In order to establish the first element of her prima facie case under the opposition clause, the plaintiff need not show that the conduct she opposed actually was in violation of Title VII.  However, and as Corizon notes, (Doc. 45 at 43-44), she must demonstrate both that she in good faith believed the conduct violated that statute and that her belief was "objectively reasonable in light of the facts and record presented."  *Butler v. Alabama Department of Transportation*, 536 F.3d 1209, 1213 (11th Cir. 2008) (internal quotes omitted).

Corizon attempts to apply this analysis, but it fails to focus on the reasonableness of the plaintiff's belief that the conduct of which she complained rose to the level of actionable racial harassment.  Instead, Corizon argues that the plaintiff "lacks the requisite good faith, subjective and objective beliefs that her refusal to abide by the ADOC and Corizon policies [the conduct for which the defendants say she was terminated] was reasonable."  (Doc. 45 at 44).  "Simply stated, a plaintiff's refusal to abide by the ADOC policies was not a statutorily protected activity, and therefore Howell's retaliation claims fail."  (*Id.*).  Since this is not the conduct on which the plaintiff's retaliation claims are based, Corizon's argument necessarily fails.

As to causation, Corizon offers only its ipse dixit that the plaintiff "cannot demonstrate the requisite causal link between her complaints of racial discrimination and her termination for her refusal to abide by the subject policies." (Doc. 45 at 45).  Accompanied by no analysis and no authority, this conclusory sentence cannot carry Corizon's threshold burden on motion for summary judgment.[5]

At any rate, Corizon insists that the plaintiff's first complaint of racial harassment occurred on March 8, 2011, (Doc. 45 at 13), and the plaintiff was fired on April 8, 2011.  A one-month gap between protected activity and adverse action

---

[5] In its reply, Corizon complains that the plaintiff did not address the causation element of her prima facie case.  (Doc. 63 at 4-5).  In fact, she did so.  (Doc. 55 at 40). But even had she not addressed causation, Corizon's failure to carry its threshold burden excused her from doing so.

constitutes "close temporal proximity" sufficient to satisfy the third element of a plaintiff's prima facie case. *See Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks constitutes close temporal proximity); *Donnellon v. Freuhauf Corp.*, 794 F.2d 598, 600, 601 (11th Cir. 1986) (one month gap satisfied the prima facie case).

### 2. Legitimate, non-retaliatory reasons.

To meet its intermediate burden, the defendant must articulate a reason "legally sufficient" to justify judgment in its favor and must support the articulated reason "through the introduction of admissible evidence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981); *accord Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998) (the defendant "must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision").

Corizon says that it fired the plaintiff due to an incident on the night of March 30, 2011. According to an incident report written by Lt. Williams, he and three other corrections officers came to the health care unit escorting an inmate "for a medical assessment." The plaintiff performed the assessment. Lt. Williams then "asked [the plaintiff] about contacting the mental health Doctor" about the inmate. The plaintiff said she was not going to do so and suggested the inmate be placed in the segregation unit. Lt. Williams then approached Gaillard, who called Dailey, who directed the plaintiff to call the mental health doctor, who advised the plaintiff to place the inmate in the observation unit, which was done. (Linton Affidavit, Exhibit 14).

Corizon acknowledges that both Thornton and Jansen participated in the decision to fire the plaintiff. When they reached their joint decision, Jansen instructed Thornton to prepare and submit to Human Resources a recommendation for the plaintiff's termination. (Doc. 45 at 18, 37). There is evidence that this decision by Thornton and Jansen was made on April 4, 2011, although Thornton

did not advise the plaintiff of her termination until April 8, after receiving approval from Human Resources. (Jansen Affidavit, ¶ 12; Thornton Affidavit at 2, 3).

Corizon in its brief asserts generally that Jansen and Thornton based their decision to terminate the plaintiff on her "failure to abide by ADOC and Corizon policies and procedures and for failing to adhere to a request from an ADOC lieutenant to abide by ADOC policies." (Doc. 45 at 37). Jansen and Thornton employ essentially the same language in their affidavits. (Jansen Affidavit, ¶¶ 5, 8; Thornton Affidavit at 3). The identification of the policies they relied on to justify their termination decision is sprinkled throughout their affidavits.

First, Jansen and Thornton determined that the plaintiff had violated a policy "which required Corizon to contact mental health when corrections brings another mental health patient to the health care unit." (Jansen Affidavit, ¶ 12). Second, the plaintiff violated a policy that "requires Corizon to contact mental health before placing a mental health patient in segregation." (*Id*., ¶ 12; *see also* Thornton Affidavit at 2). Although these technically were ADOC policies, "Corizon discharged Howell for violating a Corizon policy which required compliance with ADOC policies." (Jansen Affidavit, ¶ 9; *accord id*., ¶ 13). No other policy breaches have been identified as motivating the termination decision.

Violating the policy of an employer to comply with the policies of the employer's client, and refusing a proper request from the client, presumably are legally sufficient reasons for termination, and Corizon has offered evidence that these are the reasons that motivated Jansen and Thornton. The burden thus shifts to the plaintiff to show that a genuine issue of material fact remains as to whether Corizon's proffered reasons are a pretext for unlawful retaliation.

### 3. Pretext.

"The inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's

9

proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for discrimination." *Crawford*, 529 F.3d at 976 (internal quotes omitted).  The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279 (11th Cir. 2008).  Of course, "a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Springer v. Convergys Customer Management Group Inc.,* 509 F.3d 1344, 1349 (11th Cir. 2007) (emphasis in original) (internal quotes omitted).  To make this showing, the plaintiff may resort to "all the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom."  *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 143 (2000).

  An employer's articulated reason "that [an] employee was fired for violation of work rules is arguably pretextual when a plaintiff submits evidence … that she did not violate the cited work rule." *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) (internal quotes omitted).  The plaintiff argues she did not violate the ADOC policy and thus did not violate the Corizon policy, either.  (Doc. 55 at 43).

  Corizon has submitted the ADOC mental health referral policy.  (Linton Affidavit, Exhibit 6).  It requires the nursing staff, in "emergency situations" when mental health staff are not on site, to contact the on-call psychiatrist for consultation.  (Doc. 45 at 5; Linton Affidavit, ¶ 16; *id*., Exhibit 6, ¶¶ IV.B, V.B.3).  Corizon confirms that this is the only ADOC policy made the basis of the termination decision.  (Doc. 63 at 6-7).  Notably, the policy does not purport to require the nursing staff to contact mental health:  (a) any time an inmate receiving

mental health care is presented to the health care unit; (b) before placing a mental health patient in segregation; or (c) any time a corrections officer requests it.

Corizon does not come to grips with the stark difference between the policy as it reads and the policy as Jansen and Thornton portray it. Instead, it ignores the "emergency situations" qualifier and insists the policy applies whenever a patient receiving mental health care is presented to the health care unit. (Doc. 63 at 6-7). In light of the explicit language of the policy, Corizon's interpretation cannot be credited.

Neither Jansen nor Thornton represents that they believed the policy was as broad as Corizon now claims. Given Corizon's insistence that the plaintiff has no excuse for not knowing the content of the policy, (Doc. 63 at 7), any claim by Jansen or Thornton that they were ignorant of the policy's actual, limited reach would be deeply suspect.

Throughout its presentation, Corizon relies on the plaintiff's April 5 statement concerning the incident, including information concerning the inmate's conduct, as justifying termination. The threshold problem with Corizon's position is that Jansen and Thornton made the decision to fire the plaintiff on April 4, so they could not have considered the plaintiff's statement (or that of Dailey, also dated April 5) in reaching their decision. Lt. Williams' statement, which Corizon admits furnished the "primary basis" for the termination decision, (Doc. 45 at 19; Jansen Affidavit, ¶ 14), is silent about the inmate's behavior and thus provides no alternative source of this information.[6]

A secondary problem is that Corizon has not submitted the memo as evidence, so it is not before the Court.[7] Nor has Corizon explained how the

---

[6] Nor does Lt. Williams' statement support the proposition, claimed by Corizon, that he brought the inmate for a "mental evaluation." (Doc. 63 at 3).

[7] Corizon apparently intended to append this memo to the affidavit of Linton, (Linton Affidavit, ¶ 28), or of Jansen, (Jansen Affidavit, ¶ 11), but it did not in fact do so.

11

plaintiff's alleged statement on April 5 that she had been told the inmate had been cursing other inmates and balling his fist – fairly common behavior in a prison setting – could constitute an "emergency situation." Indeed, there is no evidence that Jansen or Thornton ever considered the March 30 incident to involve an emergency situation as required by the ADOC policy.

In its reply brief, Corizon emphasizes that it terminated the plaintiff "for her refusal to follow the correctional Lieutenant's directive." (Doc. 63 at 8). In the final sentence of her memo recommending termination, however, Thornton based the recommendation to terminate exclusively on the plaintiff's asserted violation of policy, not on a refusal to honor an institutional request independent of policy. (Doc. 55, Exhibit 19). As late as its interrogatory responses, Corizon insisted that the only reason the plaintiff was terminated was for violating ADOC policies. (*Id.*, Exhibit 3 at 6). That Corizon apparently added failure to comply with Lt. Williams' request as a justification for the termination only after the fact supports an inference that the reason is pretextual. *E.g., Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("We have recognized that an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext.").

As noted, to show pretext a plaintiff may rely on evidence adduced in support of her prima facie case. Thus, the closeness of the timing between the protected activity and the adverse action can support an inference that retaliation was the employer's true motive.[8] As noted, Corizon insists the plaintiff's first protected activity occurred on March 8, and Jansen and Thornton decided to fire her on April 4, less than four weeks later. *Cf. Jones v. Horizon Shipbuilding, Inc.*,

---

[8] *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1268 (11th Cir. 2008) ("And the record contains evidence on which reasonable minds could find pretext, including … the close temporal proximity between Martin's FMLA leave and termination."); *Hurlbert*, 439 F.3d at 1298 ("The close temporal proximity between Hurlbert's [protected activity] and his termination – no more than two weeks, under the broadest reading of the facts – is evidence of pretext, though probably insufficient to establish pretext by itself.").

12

2012 WL 5187800 at *9 n.18 (S.D. Ala. 2012) (a gap of 38 days "reduc[ed] but [did] not eliminate[e] the probative force of the timing").

  The close timing is more awkward in this case, because Jansen had not concluded his investigation into the plaintiff's complaint of racial harassment. (Doc. 55, Exhibit 14). Indeed, he had done very little to investigate. His involvement began on or about March 1, when Corizon received an anonymous hotline complaint that "Suzette Daly [sic] is racist and causing a hostile work environment for the staff." (Doc. 55, Exhibit 10). Jansen traveled to Fountain and interviewed "the majority" of employees on March 7 and 8, where he asked each employee, privately, a single question: "Do you feel it's a hostile work environment?" (Jansen Deposition at 29; Doc. 55, Exhibit 14). Even though the hotline complaint explicitly asserted a racial basis, Jansen's question did not incorporate a racial element. (*Id*. at 38). Since, as discussed in Part I.A, Corizon does not consider "hostile work environment" to mean "racial harassment," Jansen could not have expected his question to elicit any mention of racial friction, and he acknowledges only the plaintiff as having referenced race.

  Fifteen of 16 other employees responded in the affirmative to Jansen's question, with at least eight identifying "favoritism," disrespect and conflict as issues; several even mentioned Dailey as the culprit. (Jansen Deposition at 33; *id*., Exhibit 3). Nevertheless, despite the obvious potential that these responses implicated racial issues, Jansen did not ask a single employee a single follow-up question. (Jansen Deposition at 39). Instead, he reported to Human Resources that no one other than the plaintiff claimed racism. (Doc. 55, Exhibit 14). Even if technically correct, this statement overlooks how Jansen's approach was almost guaranteed to achieve such a result. Moreover, there is evidence that the report to Human Resources was not even technically correct but that another employee responded to Jansen's question by expressly claiming racial discrimination. (Doc. 55, Exhibit 13). Jansen's handling of the hotline complaint would support an

inference that his mission was to squelch any suggestion of racial harassment at Fountain, which would include the plaintiff's complaint.

This context permits additional inferences. When he learned of the March 30 incident, Jansen was still unsure how to proceed with the plaintiff's complaint. (Doc. 55, Exhibit 14). The March 30 incident gave him an out, and he leapt at it. Lt. Williams' report hit Jansen's desk on April 4, 2011, (Jansen Deposition at 139-40), and he instructed Thornton the same day to prepare a recommendation that the plaintiff be terminated. As noted, he did so without hearing from the plaintiff, or from Dailey. The next day, the decision already made, the plaintiff was directed to prepare a statement as to the March 30 incident, (Howell Declaration, ¶ 40), which would support an inference that Jansen and Thornton were papering their files in an effort to support, after the fact, a decision they had already made.

The plaintiff has noted all these problems with Corizon's case. There may well be additional indicia of pretext, but the foregoing list suffices for present purposes. Corizon does not address any of the matters discussed above except by reference to its version of the evidence, which the Court cannot accept on motion for summary judgment over the contrary version presented by the plaintiff. Accordingly, the Court concludes that Corizon's evidence is not so strong as to preclude a reasonable jury from concluding that Corizon's articulated reasons for terminating the plaintiff are a pretext for unlawful retaliation.[9]

---

[9] After briefing closed, Corizon filed a notice of supplemental authority. (Doc. 64). Corizon therein notes the Supreme Court's recent adoption of a "but-for" standard of causation for Title VII retaliation claims. *See University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013). This standard is certainly higher than the "motivating factor" standard previously employed, but Corizon has not explained how the plaintiff's evidence of pretext, as discussed in text, could not attain the current standard if accepted by a jury. Corizon's failure to show that the new standard makes a difference in this case obviates consideration of its argument that the but-for standard also applies to retaliation cases under Section 1981. (Doc. 73).

## II. State Claims.

As noted, the plaintiff asserts state claims for breach of contract, battery, assault, invasion of privacy and negligent hiring, training, supervision and/or retention.

### A. Breach of Contract.

There is evidence that Corizon is subject to an obligation to "notify and consult with the ADOC prior to discharging … professional staff." (Doc. 55, Exhibit 9). "Professional staff" includes the plaintiff. (Jansen Deposition at 18). Count Ten alleges that the plaintiff is a third party beneficiary of this provision and that Corizon breached the provision when it terminated her. (Doc. 37 at 42-43).

Corizon first argues "there is absolutely no evidence that the contract between ADOC and Corizon was intended to bestow a direct benefit on [the plaintiff]." (Doc. 46 at 54). As set forth previously, a defendant cannot simply pronounce that the plaintiff cannot prove its case but must "poin[t] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Clark*, 929 F.2d at 608. Corizon's one-sentence declaration does not accomplish this.

Next, Corizon asserts it is uncontroverted that it did not breach the provision. (Doc. 45 at 54). Corizon did not submit the pages from Jansen's deposition on which it relies for this contention, but the plaintiff did. Corizon does not explain what portion of Jansen's testimony negates a contractual breach, but it is presumably his statement that "we do not have to have consultation with them" but only "to notify them of terminations." (Jansen Deposition at 13-14). Jansen's testimony, however, contradicts the explicit language of the contractual provision and so cannot render the matter uncontroverted. As to whether consultation occurred, Jansen testified he did not consult with ADOC and does not know if anyone else did. (*Id*. at 16).

15

In its reply brief, Corizon suggests it is entitled to summary judgment because the plaintiff did not address Count Ten in her brief. (Doc. 63 at 1). But "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004).

### B. Battery and Assault.

Counts Eleven and Twelve are based on a single incident in which Gaillard allegedly shoved a medicine cart into the plaintiff. (Doc. 37 at 43-45).[10] Gaillard argues that these claims must fail because they are intentional torts and it was determined by Dailey and Thornton that the incident was an accident. (Doc. 45 at 55). Without a showing that this determination is binding on the plaintiff or the jury, this argument must fail.

Gaillard also notes that the incident occurred while the plaintiff was sitting down. (Doc. 45 at 55). She does not explain the significance of this fact, and the Court discerns none.

In her reply brief, Gaillard adds that the plaintiff never filed an injury report, workers' compensation claim, or other documentation of the incident. (Doc. 63 at 16). As noted, the Court will not consider arguments withheld until reply. At any rate, such matters do not negate the occurrence of an assault or battery.

---

[10] In her brief, the plaintiff asserts these claims are also based on a second, similar incident occurring over a year later. (Doc. 55 at 50). As Gaillard correctly points out, (Doc. 63 at 16), the second amended complaint explicitly limits the claims to the first incident.

### C. Invasion of Privacy.

Count Thirteen alleges that Gaillard invaded the plaintiff's privacy by "constant public cussing at" the plaintiff and "by asking a correction officer if he wanted to bed her." (Doc. 37 at 45-46).

Alabama recognizes four forms of invasion of privacy:

> (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.

*Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003) (internal quotes omitted). Count Thirteen invokes the first and third of these. (Doc. 37 at 45).[11]

As for the first prong, "[t]he invasion may be physical intrusion into a place in which the plaintiff has secluded himself," or "use of the defendant's senses ... to oversee or overhear the plaintiff's private affairs," or "some other form of investigation or examination into his private concerns." *Phillips v. Smalley Maintenance Services, Inc.*, 435 So. 2d 705, 710-11 (Ala. 1983) (internal quotes omitted); *accord Gary v. Crouch*, 867 So. 2d 310, 318 (Ala. 2003) ("Lt. Gary has made no showing that Chief Crouch has intruded on her seclusion, because she has made no showing that he sought or obtained any private information about her, or that he intruded upon her 'physical solitude or seclusion' by seeking any information that he did not properly have access to through his role as her supervisor in the police department."). The plaintiff alleges no physical intrusion, no spying, and no other form of investigation or examination into her private concerns.

"[I]t is clear that there must be something in the nature of prying or intrusion, and that mere noises which disturb a church congregation, or bad

---

[11] In her brief, the plaintiff seeks to implicate the second prong as well. (Doc. 55 at 51). The plaintiff cannot amend her complaint in this manner.

17

manners, harsh names, and insulting gestures in public, are not enough [to state a claim for wrongful intrusion]." *Martin v. Patterson*, 975 So. 2d 984, 994 (Ala. Civ. App. 2007) (internal quotes omitted).  Gaillard may have displayed bad manners in asking a corrections officer if he wanted to sleep with the plaintiff,[12] and she may have employed harsh and insulting names in cursing at the plaintiff, but she did not thereby pry into the plaintiff's private affairs.  The plaintiff thus cannot sustain her claim under the first prong of the tort.

As for the "false light" prong of the tort, Gaillard argues generally that her alleged conduct "does not rise to a level sufficient to sustain an invasion of privacy claim."  (Doc. 45 at 51).  She relies for this proposition on a case involving the wrongful intrusion prong, not the false light prong, and so has failed to meet her burden.

### D.  Negligent Employment.

Count Fourteen alleges that Corizon had actual notice of the actions by Gaillard and Dailey complained of by the plaintiff but failed to properly train or supervise them, with the result that the plaintiff suffered several actionable torts.  (Doc. 37 at 46-47).

Corizon first argues that Count Fourteen fails to identify the offending employees.  (Doc. 45 at 46).  As noted, however, Gaillard and Dailey are specifically named.  (Doc. 37, ¶ 176).

Corizon next argues that there must be an underlying, actionable tort under Alabama law.  (Doc. 46 at 46-49).  As discussed in Parts II.B and II.C, the plaintiff has alleged several torts by Gaillard, each of which survives Gaillard's motion for summary judgment.

---

[12] Gaillard argues that her query ("What, do you want to ride the white pony?") was not intended as the plaintiff interprets it.  (Doc. 45 at 50).  But she has not explained why a jury could not find otherwise.

Finally, Corizon asserts there is no evidence that it knew or should have known of any incompetency of Gaillard. (Doc. 45 at 49). But both the plaintiff and Corizon have introduced substantial evidence of complaints the plaintiff registered with her employer concerning her treatment by Gaillard. Corizon cannot meet its threshold burden on motion for summary judgment without addressing this mass of material and explaining how it fails to demonstrate Gaillard's incompetency or to place Corizon on notice of same.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is **granted** with respect to Counts Five, Six, Seven, Eight and Nine, and **granted** with respect to Count Thirteen to the extent based on a wrongful intrusion into physical solitude or seclusion. In all other respects, the defendants' motion for summary judgment is **denied**.[13]

DONE and ORDERED this 30th day of August, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[13] The plaintiff's motion to strike the affidavit of Larry Linton, (Doc. 49), is **denied as moot**, since the material contained therein cannot support summary judgment. The defendants' motion to strike the affidavit of Makeba Lippitt, (Doc. 57), is **denied as moot**, since the Court has not relied on anything contained therein.