# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JULIE HOWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 12-0272-WS-N |
| | ) |
| CORIZON, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

The second amended complaint, (Doc. 37), alleged a total of 14 causes of action against one or both of the two defendants. Counts Five through Nine were dismissed based on the plaintiff's formal abandonment of them. (Doc. 55 at 37 n.12; Doc. 74 at 2, 19). A portion of Count Thirteen (a claim against defendant Gaillard for invasion of privacy) was dismissed on motion for summary judgment. (*Id*. at 17-19). The plaintiff abandoned the balance of Count Thirteen, as well as Count Ten, by omitting them from the joint pretrial document. (Doc. 84 at 4).[1] During jury selection on November 5, 2013, the plaintiff orally moved to dismiss her claims against defendant Gaillard, which motion the Court granted. (Doc. 93). This ruling eliminated Counts Eleven, Twelve and the balance of Count Thirteen, as well as that portion of Count Two directed against Gaillard.

The action proceeded to jury trial on November 12, 2013 against defendant Corizon only. The sole remaining counts were for racial harassment under Title

---

[1] The parties were warned in advance that, "[o]nce adopted by the Court as part of the Pretrial Order, the Joint Pretrial Document shall constitute the final statement of the claims … at issue …." (Doc. 27, Attachment at 4, ¶ 5). The order on pretrial conference thereafter incorporated the joint pretrial document by reference and declared that it "shall constitute the final statement of the issues involved in this action …. Dispositive legal issues that are not contained in the parties' Joint Pretrial Document … will not be considered." (Doc. 89 at 2, ¶ C.1).

VII and Section 1981 (Counts One and Two); for retaliation under Title VII and Section 1981 (Counts Three and Four); and for negligent hiring, training, supervision and retention ("negligent employment") under state law (Count Fourteen). The plaintiff presented her evidence and rested on the afternoon of November 13, following which the defendant presented three motions for judgment as a matter of law ("JMOL"). (Docs. 95-97). Both parties presented oral argument concerning the motions. After carefully considering the motions, the oral argument, the testimony and exhibits introduced during the plaintiff's case, and the governing law, the Court orally granted the defendant's motions. The Court enters this order to more fully explain its ruling.

A motion for JMOL should be granted when, after "a party has been fully heard on an issue," the Court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue [and], under the controlling law, [the party's claim] can be maintained … only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1). "In order to survive a defendant's motion for judgment as a matter of law, offered at the conclusion of the plaintiff's case, the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim." *Nebula Glass International, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1210 (11th Cir. 2006) (internal quotes omitted). "[T]he non-movant must do more than raise some doubt as to the existence of facts but must produce evidence that would be sufficient to require submission of the issue to a jury." *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). "Although we look at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Id*. (internal quotes omitted).

**I. Racial Harassment.**[2]

The plaintiff, who is white, was employed by the defendant from late 2007 until April 2011 as an RN on the 11-7 shift. She testified that a racially hostile work environment was created by three black LPNs (including Gaillard) whom she supervised and by the black director of nursing ("Dailey").

The plaintiff testified that, prior to the final 18 months of her employment, she heard the black LPNs refer to white inmates as "mother fucker," "cracker," "fucking crackers," "fucking white bastards," "old white bastards" and "fucking white punks" and to white nurses as "snow bunnies." The plaintiff offered no evidence of non-verbal racial conduct preceding her final 18 months of employment.

As for racial language used in the final 18 months of her employment, the plaintiff testified to three racially tinged comments: (1) once, Gaillard asked a correctional officer, in the plaintiff's presence, "What, you want to ride the white pony?"; (2) once, after seeing write-ups on the LPNs that the plaintiff had authored, Gaillard referred to the plaintiff, in her hearing, as a "cracker"; and (3) once, one of the LPNs told the plaintiff she wished they had a black supervisor. While the plaintiff testified generally that the LPNs "had made racial slurs," the foregoing are the only three comments she identified, and she did not testify that more than these three were made during the final 18 months of her employment.[3]

As for racially hostile conduct during her final 18 months of employment, the plaintiff's testimony and her many written complaints focus on the LPNs' failure to do their jobs, failure to help the plaintiff when she needed it, yelling at

---

[2] The parties agree that the same analysis applies to both the Title VII and Section 1981 variants of the plaintiff's harassment and retaliation claims. (Doc. 74 at 4). *See also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (hostile work environment); *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257-58 (11th Cir. 2012) (retaliation).

[3] As the defendant pointed out in cross-examination of various witnesses, none of the plaintiff's written complaints mention anything about any racially tinged comments.

her, directing profanity at her, using body language (rolling eyes and folding arms) and voice inflections the plaintiff did not like, and being generally rude to her – conduct that the plaintiff describes globally as "insubordination." There was also a single incident in which Gaillard shoved a medicine cart into the plaintiff. As to the director of nursing, the plaintiff testified that Dailey failed to investigate or to support her when she complained of the LPNs' conduct; wrote her up when she complained; and altered her work assignments at the LPNs' instigation. Finally, the plaintiff relies on the habit of the LPNs and Dailey of excluding the plaintiff when they socialized on the work site.

### A. Matters That Cannot Be Considered.

The plaintiff testified that her work environment was racially hostile only during the final 18 months of her employment and that she has "no complaints" from before that time because the hostility did not begin until then.[4] "To be actionable under Title VII, a hostile work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1247 (11th Cir. 2004) (internal quotes omitted). Because the plaintiff did not subjectively perceive her work environment to be racially hostile prior to the final 18 months of her employment, she cannot base her claim on the LPNs' descriptions of white inmates and nurses.

As the parties agree, (Doc. 84 at 5), the Eleventh Circuit "has repeatedly instructed that a plaintiff wishing to establish a hostile work environment claim show: (1) that he belongs to a protected group; (2) that he has been subject to

---

[4] The plaintiff testified that she did not consider the LPNs' descriptions of white inmates and nurses to create a hostile work environment because they were not directed at her. She further testified that, until the summer of 2009, she was assigned the medical ward down the hall and so had little contact with the LPNs. She confirmed that, until her physical location changed in the middle of 2009, she did not experience insubordination, cursing or any hostility.

unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee …; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment ….." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

A claim of hostile work environment must be based on "harassment." This limits in several ways the range of language and conduct that can be used to support such a claim, two of which are important here. First, "discrete acts … must be challenged as separate statutory discrimination and retaliation claims [and] cannot be brought under a hostile work environment claim." *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008). Thus, for example, a plaintiff cannot base a hostile work environment claim on allegations that "harsher discipline was received by [white] employees, and complaints of discrimination were subject to retaliation and not investigated." *Id*. at 1378-79. The plaintiff alleges such things as to Dailey, but they cannot be challenged under her racial harassment claim. The same is true of the allegation that Dailey altered the plaintiff's work assignments.

Second, "[t]o establish that a workplace constitutes a hostile work environment, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult …." *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) (internal quotes omitted); *accord Miller*, 277 F.3d at 1276-77. Being "treated coolly and made to feel unwelcome" does not create a fact issue under this standard. *Rojas*, 285 F.3d at 1344. Nor does "uncooperative behavior of co-workers." *Woodruff v. School Board*, 304 Fed. Appx. 795, 799 (11th Cir. 2008).

Little of what the plaintiff alleges can be characterized as "intimidation, ridicule, and insult," on which a harassment claim must be based. Being excluded from on-site social gatherings may make one feel unwelcome, but it does not

5

constitute intimidation, ridicule or insult. Off-putting body language and tonal inflections may be cool treatment, but it is not intimidation, ridicule or insult. Not performing one's work duties and not helping a superior perform hers may be uncooperative, but it is not intimidation, ridicule or insult. Wishing for a supervisor of a different race may reflect racial bias, but it is not intimidation, ridicule or insult.[5] All of this conduct may be considered rude in certain circles, but "Title VII … is not a general civility code," *Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) (internal quotes omitted), and it "was never intended to protect employees from all unpleasant and rude conduct in the workplace." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1253-54 (11th Cir. 1999) (en banc) (Edmondson, J., concurring).

In *Njie v. Regions Bank*, 198 Fed. Appx. 878 (11th Cir. 2006), the plaintiff complained that her subordinate: made racial slurs; stated that she did not respect the plaintiff and that she did not want to work for the plaintiff; refused to follow orders; refused to hold committee meetings; refused to submit reports; refused to inform the plaintiff of her lunch or vacation schedule; stated that the plaintiff could not do anything to her; and was generally insubordinate. *Id*. at 880. In assessing the plaintiff's racial harassment claim, the Eleventh Circuit considered only the racial slurs. *Id*. at 883-84. This was proper, because the subordinate's rudeness, insubordination and failure to do her job did not constitute intimidation, ridicule or insult, as required to support such a claim.

**B. Matters That May Be Considered.**

The Court assumes without deciding that the balance of the language and conduct of which the plaintiff complains constitutes intimidation, ridicule or insult for purposes of a racial harassment claim. The Court further assumes that the plaintiff has presented sufficient evidence to allow the jury to find that this language and conduct was based on her race for purposes of the third element of

---

[5] The plaintiff acknowledged that this comment was not a racial slur.

6

her racial harassment claim. Even indulging these assumptions, the sum total of the language and conduct the Court may consider in evaluating the plaintiff's claim consists of the yelling and cursing, the medicine cart incident, and two racially tinged comments.

"Determining whether the harassment was sufficiently severe or pervasive involves both an objective and a subjective component. [citation omitted] In determining the objective element, a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann*, 526 F.3d at 1378 (internal quotes omitted). "Any relevant factor must be taken into account, but no single factor is dispositive." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1299 (11th

**1. Frequency.**

As noted, the plaintiff is left with only two racially tinged comments. She offered evidence of only four instances of yelling: on September 2, 1010, on February 14, 2011, on February 21, 2011, and on March 2, 2011. She identifies only one instance of cursing, which is part of the March 2 event and not a separate incident. The medicine cart episode brings the total to seven.

The Eleventh Circuit considers an incident every two months, or even every month, to be too infrequent to weigh in favor of a harassment claim. *Mendoza*, 195 F.3d at 1249 (five inappropriate instances in eleven months were "far too infrequent" to support a sexual harassment claim); *Gupta*, 212 F.3d at 579, 584-85 (eight episodes of touching, partial exposure, staring and complimenting in six or seven months, plus repeated invitations to lunch during the same period, was not

frequent). Here, the plaintiff has presented evidence of seven incidents over a period of 18 months, which is "far too infrequent" to support her claim.[6]

### 2. Severity.

The plaintiff testified that she found the "ride the white pony" comment offensive because of its sexual connotation, not because of any racial connotation. This underscores the relative mildness of the comment from a racial standpoint. Being called a "cracker" may be offensive, but it is not severe. *Hansen v. Perry Technologies*, 206 F. Supp. 2d 1223, 1232-33 (S.D. Fla. 2002).

The plaintiff's evidence of yelling and cursing was as follows. First, on September 2, 2010, Gaillard yelled, "Ms. Howell, it's time for pill call!" and then did so again a moment later. Second, at a meeting with management on February 14, 2011 to discuss friction on the 11-7 shift, Gaillard yelled that the plaintiff wouldn't help the LPNs; two LPNs yelled out objections when the plaintiff accused them of work rule violations; and Dailey then yelled something before storming out and slamming the door. Third, on February 21, 2011, Gaillard shouted, "I don't want that there," when the plaintiff placed a machine on the medicine cart that Gaillard was using in performing pill call. Finally, on March 2, 2011, Gaillard yelled at the plaintiff as she stretched past Gaillard (who was seated at a desk), "You could ask me to move!" When the plaintiff explained she was trying to reach the telephone, Gaillard yelled, "How am I supposed to know you need the F- - - - - - phone!" When the plaintiff told Gaillard she didn't need to yell, Gaillard yelled, "You're not going to cuss at me." When the plaintiff denied cursing, Gaillard yelled, "You said 'you know I need to use the damn phone.'" The plaintiff thereupon left the room, and the episode ended.

---

[6] Even if all seven incidents occurred between September 2010 and March 2011 (and this cannot be assumed, since the plaintiff did not provide dates for several incidents), this would still be too infrequent under *Gupta* to favor her claim.

8

The first three incidents are simply communications about work matters, with no exacerbating factors beyond rudeness. The final incident reflects inappropriate behavior, but it lasted only a few seconds, the bad language was used to describe the telephone rather than the plaintiff, and the plaintiff did not testify that she felt threatened or that others witnessed the episode. *See Johnson v. Chevron Corp.*, 2009 WL 1404699 at *2-3, 13 (N.D. Cal. 2009) (three episodes of the plaintiff's supervisor yelling at him, at least two of them occurring during staff meetings and including the supervisor's physically preventing the plaintiff from leaving the room, were not sufficiently severe to support a sexual harassment claim); *Ervin v. Nashville Peace and Justice Center*, 673 F. Supp. 2d 592, 600, 604 (M.D. Tenn. 2009) (the plaintiff's being repeatedly screamed at by the board chair at a board meeting while having papers grabbed from his hands was not severe conduct for purposes of a racial harassment claim); *Johnson v. Tune*, 2011 WL 3299927 at *6 (E.D. Tex.) (being yelled at by a red-faced supervisor for 15 seconds was not sufficiently severe to support a racial harassment claim), *report and recommendation adopted*, 2011 WL 3329066 (E.D. Tex. 2011).

Shoving a medicine cart into someone cannot be a good thing, but the plaintiff's evidence provided no detail about this incident (such as the force employed or the infliction of any injury or pain) and so failed to show that the incident was severe.

In summary, the plaintiff failed to show that any of the relevant incidents individually, or all of them in combination, were sufficiently severe to support a claim of racial harassment.

### 3. Quality.

There is no evidence that any incident, other than the medicine cart episode, was physically threatening. Nor are any of the episodes humiliating. *See Fuelling v. New Vision Medical Laboratories, LLC*, 284 Fed. Appx. 247, 259 (6th Cir. 2008) (use of the term "cracker" is offensive but is not, without special evidence to that

9

effect, humiliating); *Aguilera v. Fluor Enterprises, Inc.*, 2012 WL 3108864 at *10 (N.D. Ind. 2012) (a plaintiff's being yelled at in front of others for an infraction he did not commit "does not reach the level of objectively humiliating"). The quality of the incidents does not support a claim of racial harassment.

    **4. Interference.**

    This factor "involves both a subjective and objective inquiry." *Gupta*, 212 F.3d at 586. Subjectively, the plaintiff testified that she dreaded going to work, was in tears by the end of her shift, was anxious and experienced headaches and sick stomach, but she did not testify that her work performance was adversely impacted by the language and conduct of which she complains, much less that it was affected by that small subset of language and conduct on which her clam can legally be based. *See Whitby v. Secretary for Department of Homeland Security*, 480 Fed. Appx. 960, 966 (11th Cir. 2012) (plaintiff's testimony that the environment "made him not want to work with" the alleged harassers is not enough; there must be evidence the plaintiff's job performance was affected). Without such evidence, this factor does not support her claim. *Mendoza*, 195 F.3d at 1248-49 (where "nothing in the record indicates that Page's conduct impaired Mendoza's job performance," the unreasonable interference factor was "absen[t]"); *cf. Gupta*, 212 F.3d at 586 (subjective prong met when the plaintiff testified not merely to physical manifestations of stress but testified that those manifestations affected her work performance).

    Objectively, the question is whether "the conduct and statements in question [would or] would not have interfered with a reasonable employee's performance of her job." *Gupta*, 212 F.3d at 586. Two uses of mild racial language, plus four brief instances of yelling over work-related disagreements, and one incident of being shoved with a medicine cart, spread out over 18 months or even seven months, would not interfere with a reasonable employee's job performance.

### 5. Totality of the circumstances.

Because none of the four listed factors support a claim of racial harassment, combining them does not support such a claim. *See, e.g., McCann*, 526 F.3d at 1378-79 (being called "girl" once, hearing black employees called "boy" once, and hearing of two uses of the "N" word, over a period exceeding two years, could not support a racial harassment claim); *Peters v. HealthSouth, Inc.*, ___ Fed. Appx. ___, 2013 WL 5567734 at *6 (11th Cir. 2013), ("The discrete instances of mockery and yelling identified by [the plaintiff], which were neither physically threatening nor particularly frequent, were not sufficiently severe or pervasive to rise to the extreme level of abuse demanded by Title VII.").

### C. Summary.

As the Court stated in orally announcing its ruling, the plaintiff's evidence reflects that her working conditions were less than ideal. But Title VII and Section 1981 do not protect employees from the "ordinary tribulations of the workplace," *Gupta*, 212 F.3d at 586 (internal quotes omitted), and working with unpleasant, unhelpful subordinates and supervisors is, unfortunately, an ordinary tribulation. The Eleventh Circuit has "decline[d] [an] implicit invitation to transform Title VII into a general civility code that bars any and all workplace conduct that smacks of immaturity, boorishness, discourtesy, or bad taste." 2013 WL 5567734 at *6. Here, as in *Gupta*, "a finding that [the plaintiff's] complaints constitute [racial] harassment would lower the bar of Title VII [and Section 1981] to punish mere bothersome and uncomfortable conduct, and would trivialize true instances of [racial] harassment." 212 F.3d at 586.

Accepting all the plaintiff's evidence as true and applying it to the governing legal standard, a reasonable jury would not have a legally sufficient evidentiary basis to find for the plaintiff as to the fourth essential element of her

racial harassment claim. Accordingly, the defendant's motion for judgment as a matter of law, (Doc. 97), is **granted**.

## II. Retaliation.

As the parties agree, (Doc. 84 at 16), the first element of the plaintiff's retaliation claim is that she "engaged in statutorily protected activity." *Alvarez v. Royal Atlantic Developers, Inc*., 610 F.3d 1253, 1268 (11th Cir. 2010). The relevant "statutorily protected activity" in this case reads as follows: "It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because he has opposed any practice made an unlawful employment practice by this subchapter …." 42 U.S.C. § 2000e-3(a). Although the plaintiff need not prove an actual violation of Title VII (or Section 1981) to support a retaliation claim for opposing the practice, she must have possessed "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Butler v. Alabama Department of Transportation*, 536 F.3d 1209, 1213 (11th Cir. 2008) (internal quotes omitted). "A plaintiff must not only show that [s]he *subjectively* (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was *objectively* reasonable in light of the facts and record presented." *Id*. (emphasis in original; internal quotes omitted).

The plaintiff's retaliation claims are based on the allegation that she was given greater job responsibilities and then fired for complaining of racial harassment/racially hostile work environment. (Doc. 37 at 33-34). When, as here, the asserted unlawful employment practice is a hostile work environment, the plaintiff must have an objectively reasonable belief that the language and conduct at issue "is enough to permeate the workplace with discriminatory intimidation, ridicule and insult and to alter the conditions of the victim's employment and create an abusive working environment." *Id*. at 1214 (internal quotes omitted).

"[T]he reasonableness of [a plaintiff's] belief that [the defendant] engaged in an unlawful employment practice must be measured against existing substantive law." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (internal quotes omitted). That is, an otherwise unreasonable belief that the defendant's conduct was unlawful is not rendered reasonable by the plaintiff's "ignorance of the substantive law." *Weeks v. Harden Manufacturing Corp.*, 291 F.3d 1307, 1317 (11th Cir. 2002).

There is evidence that the plaintiff subjectively believed she experienced actionable racial harassment. For reasons set forth in Part I, however, any such belief was not objectively reasonable in light of existing substantive law. As in *Butler*, "[i]t is not even close." 536 F.3d at 1213. No plaintiff versed in the relevant law could reasonably believe that she could base a racial harassment claim on allegations that her subordinates did not do their jobs, did not help her, used unwelcoming body language and voice inflections, and excluded her from social gatherings. Nor could a plaintiff versed in the relevant law reasonably believe she could base such a claim on allegations that her supervisor did not investigate complaints of such conduct, did not support her in her conflicts with her subordinates, and retaliated against her for complaining. Finally, no plaintiff versed in the relevant law could reasonably believe that two comments with a mild racial flavor, plus four brief incidents of yelling over work matters and one incident of being bumped by a medicine cart, spread over 18 months (or even seven months) could constitute actionable racial harassment.

Accepting all the plaintiff's evidence as true and applying it to the governing legal standard, a reasonable jury would not have a legally sufficient evidentiary basis to find for the plaintiff as to the first essential element of her retaliation claim. Accordingly, the defendant's motion for judgment as a matter of law, (Doc. 95), is **granted**.

**III. Negligent Employment.**

"[A] party alleging negligent supervision and hiring must prove the underlying wrongful conduct of the defendant's agents." *Flying J Fish Farm v. Peoples Bank*, 12 So. 3d 1185, 1196 (Ala. 2008) (internal quotes omitted). The plaintiff confirmed at oral argument on the instant motion that the "underlying wrongful conduct" on which she relies is the hostile work environment created by the LPNs and Dailey and the retaliation practiced by Dailey and those responsible for her termination, both made wrongful by Title VII and Section 1981.

That being so, the plaintiff's claim fails for two reasons. First, as discussed in Parts I and II, the plaintiff cannot prove that she was subjected to an unlawful hostile work environment or to unlawful retaliation. Second, as this Court has previously held, "the underlying conduct must constitute a common-law, Alabama tort committed by the employee, not … a federal cause of action such as Title VII." *Roberson v. BancorpSouth Bank, Inc.*, 2013 WL 3153755 at *4 (S.D. Ala. 2013) (internal quotes omitted) (citing cases).

Accepting all the plaintiff's evidence as true and applying it to the governing legal standard, a reasonable jury would not have a legally sufficient evidentiary basis to find for the plaintiff as to an essential element of her negligent employment claim. Accordingly, the defendant's motion for judgment as a matter of law, (Doc. 96), is **granted**.

**CONCLUSION**

For the reasons set forth above and in open court on November 13, 2013, the defendant's motions for judgment as a matter of law are **granted**. The plaintiff's claims are **dismissed with prejudice**. Judgment will be entered accordingly by separate order.

DONE and ORDERED this 18th day of November, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE